## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| B&H NATIONAL PLACE, INC., *et al.*, ) | |
| ) | |
| **Plaintiffs/Counter-Defendants,** ) | |
| ) | |
| **v.** ) | Civil Case No. 10-855 (RJL) |
| ) | |
| CHARLES BERESFORD, *et al.*, ) | |
| ) | |
| **Defendants/Counter-Plaintiffs.** ) | |
| ) | |
| **v.** ) | |
| BYUNG KWON CHO & HANA CHO, ) | |
| ) | |
| **Third-Party Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION
### (March **24** 2012) [##51, 52, 62]

Plaintiffs B&H National Place, Inc. and B&H International Square, Inc.

("plaintiffs") bring this suit against defendants Charles Beresford, Delores Beresford,

Stephen Forehand, Froda, Inc., and Froda International Square LLC (collectively, the

"Beresford defendants") and Five Guys Enterprises, LLC ("FGE"). Plaintiffs allege

multiple claims arising out of the Beresford defendants' opening of a new restaurant near

other restaurants that plaintiffs had purchased from the Beresford defendants. Presently

before the Court are three summary judgment motions: (1) the Beresford defendants'

motion for judgment on plaintiffs' claims [Dkt. #51]; (2) defendant FGE's motion for

judgment on plaintiffs' claims [Dkt. #52]; and (3) plaintiffs and third-party defendants

Byung Kwon Cho and Hana Cho's ("the Chos") motion for judgment on several of

plaintiffs' claims as well as on FGE's counterclaims and third-party claims [Dkt. #62].

Upon consideration of the parties' pleadings, the relevant law, and the entire record

herein, the defendants' motions are GRANTED and the plaintiffs and third-party

defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

This case involves three Five Guys Burgers and Fries ("Five Guys") restaurants

located in the District of Columbia. In 2008, the Beresford defendants sold plaintiffs two

of these restaurants—the Five Guys at 1331 Pennsylvania Avenue, N.W. ("National

Place") and the Five Guys at 1825 Eye Street, N.W. ("International Square"). Am.

Compl. ¶¶ 2-3, 23 [Dkt. #1-1]. Currently, plaintiffs B&H National Place, Inc. ("B&H

National") and B&H International Square, Inc. ("B&H Intl."), who are also counter-

defendants in this litigation, own and operate these two restaurants. *Id.* ¶¶ 2-3. In turn,

the Chos, who are also third-party defendants in this case, are owners and principals of

the two B&H entities. Def. FGE's Mot. Summ. J. ("Def. FGE's Mot.") 6, ¶ 11 [Dkt.

#52].

The previous owners of National Place and International Square were,

respectively, defendants Froda, Inc. ("Froda") and Froda International Square LLC

("Froda Intl."). Am. Compl. ¶¶ 7-8.[1] In turn, defendants Charles Beresford, Delores

---

[1]    However, Charles Beresford was the franchisee for both restaurants. Beresford
Defs.' Mot. 5, ¶23; Am. Compl. ¶¶ 15-17. In addition, Charles Beresford has an
agreement with FGE, granting him certain rights to "develop" Five Guys franchises in the
Washington, D.C. area. *See generally* Am. Compl., Ex. A.

Beresford, and Stephen Forehand (the "individual defendants") are the stockholders and officers of the Froda entities. *Id.* ¶ 9; Beresford Defs.' Mot. Summ. J. ("Beresford Defs.' Mot.") 3, ¶¶ 6-7, 10 [Dkt. # 51].   Currently, Froda Intl. owns and operates a third restaurant, located at 1400 Eye Street, N.W. ("1400 Eye Street"), which opened in November 2009. Am. Compl. ¶¶ 8, 47; Pls.' & Third-Party Defs.' Mot. Summ. J. ("Pls.' Mot.") 6, ¶ 25 [Dkt. #62].   Five Guys Enterprises, LLC ("FGE"), which is a defendant, counter-claimant, and third-party plaintiff in this case, is the franchisor of all Five Guys restaurants. Am. Compl. ¶ 10.   The details and terms of the sale of the National Place and International Square restaurants are central to this litigation.

In May 2008, a realty broker contacted Charles Beresford and Stephen Forehand to inquire whether any of the Beresford defendants' Five Guys restaurants, including National Place and International Square, were for sale. Decl. of J. Noh, Ex. GG to Pls.'Opp'n to Beresford Defs.' Mot. ("Pls.' Opp'n Beresford") ¶¶ 2-5 [Dkt. #56-3].   The broker then identified the Chos as potential buyers and, on June 2, 2008, submitted an offer on the Chos' behalf to purchase National Place and International Square. Pls.' SOF ¶¶ 52-54 [Dkt. #56-1].   After some negotiations, the Chos entered into a Purchase Agreement with the Froda entities, backdated June 2, 2008, in which those entities agreed to sell the two restaurants to the Chos. Beresford Defs.' SOF ¶¶ 24-31 [Dkt. #51-1]; Am. Compl. ¶ 23, Ex. B.[2]   Then, on October 14, 2008, FGE entered into a Transfer and

---

[2]      The Chos executed the Purchase Agreement on June 11, 2008, and Forehand executed the agreement for Froda on July 3, 2008. Am. Compl., Ex. B at 7. The Purchase Agreement contained a non-compete provision prohibiting sellers from

Release Agreement with Charles Beresford, the Chos, and the B&H entities, in which

Beresford transferred the franchise rights for the restaurants to the B&H entities—the

Chos' newly formed corporations. *See* Am. Compl. ¶ 37, Ex. C.  In that agreement, the

Chos and the B&H entities released FGE from any claims and liabilities arising prior to

October 14, 2008.  Am. Compl., Ex. C ¶ 9.

Later, at the sales-closings of the restaurants, the parties entered into separate non-

compete agreements ("the Covenants").  Pls.' SOF ¶¶ 70-75; Am. Compl. Exs. D, E.

Specifically, B&H National, the final purchaser of National Place, entered into a

Covenant with Froda on November 6, 2008, Am. Compl. ¶ 38, Ex. D, and B&H Intl., the

final purchaser of International Square, entered into a Covenant with Froda Intl. on

January 30, 2009, Am. Compl. ¶ 40, Ex. E.[3]

Separately, Forehand had applied for site approval from FGE for the 1400 Eye

Street location on June 4, 2008.  Def. FGE's Mot. 6, ¶ 9.[4]  Although FGE initially

approved the site, the project was delayed and then terminated before finally coming to

fruition.  *See* Ex. I to Pls.' Mot. at FGE000444-45 [Dkt. #62-3].  On or about November

---

engaging in a similar type of business or soliciting trade for such business "for a distance
of 4 block [sic] from the above mentioned address[es]."  *Id.* ¶ 8.

[3]     Employing nearly identical language to that in the Purchase Agreement, the
Covenants provide that "Seller hereby covenants and agrees that he will not, directly or
indirectly, whether as a partner, stockholder, officer, director, or employee of a
corporation, or as sole proprietors, engage in the business similar to said Business nor
solicit trade from said Business for a distance of four (4) blocks from the Business for a
period of five (5) years."  Am. Compl. Exs. D ¶ 1, E ¶ 1.

[4]     In the application, Forehand indicated that the National Place and International
Square restaurants were five blocks from the proposed site.  Def. FGE's Mot. 6, ¶ 9.

2, 2009, Froda Intl. opened 1400 Eye Street. Am. Compl. ¶ 47. Subsequently, on May 3,

2010, plaintiffs initiated this suit in D.C. Superior Court and, on May 7, 2010, amended

that complaint. Then, on May 24, 2010, the Beresford defendants removed the case to

this Court. Plaintiffs allege multiple claims centered on plaintiffs' contention that the

Beresford defendants opened 1400 Eye Street in violation of the Covenants, with FGE's

knowledge and approval. *Id.* ¶ 1. Specifically, plaintiffs allege breach of both Covenants

against the Beresford defendants (Counts I, III)[5], breach of both Covenants under an

alter-ego theory against the individual defendants (Counts II, IV), breach of the implied

duty of good faith and fair dealing against the Beresford defendants (Count V),[6] fraud

against the Beresford defendants (Count VII), tortious interference with a contract against

FGE (Count VIII), and common law and statutory business conspiracy against all

defendants (Counts IX - X). *Id.* ¶¶ 53-124.

On October 29, 2010, FGE filed its answer and counterclaimed against plaintiffs,

seeking damages and attorneys' fees for an alleged breach of the Transfer and Release

Agreement by filing suit against FGE. Def. FGE Answer & Countercl. 13-15 [Dkt. #17].

Subsequently, on November 8, 2010, FGE filed a third-party complaint against the Chos

as owners and personal guarantors of the B&H entities and as separate signatories to the

---

[5]     Plaintiffs do not and could not, allege that Froda breached the International Place
Covenant or that Froda Intl. breached the National Place Covenant. Am. Compl. ¶¶ 53-
59, 71-77.

[6]     Plaintiffs also request injunctive relief against the Beresford defendants for
allegedly breaching the Covenants and the implied duty of good faith and fair
dealing(Count VI). Am. Compl. ¶¶ 94-97.

Transfer and Release Agreement, also seeking damages and attorneys' fees for breach of that agreement. Def. FGE Third Party Compl. ¶¶ 10-20 [Dkt. #21].

Following discovery, the Beresford defendants moved for summary judgment on all of plaintiffs' claims against them (Counts I-VII, IX-X) on May 31, 2011. Beresford Defs.' Mot. 1. Then, on June 3, 2011, FGE separately moved for summary judgment on plaintiffs' claims against FGE (Counts VIII-X). Def. FGE's Mot. 1-4. Finally, on August 10, 2011, the plaintiff B&H entities and the third-party defendant Chos moved (1) for partial summary judgment in favor of their breach of contract claims (Counts I-IV), breach of the implied duty of good faith and fair dealing claim (Count V), and tortious interference claim (Count VIII); and (2) for summary judgment on FGE's counterclaims and third-party claims. Pls.' Mot. 1.

## STANDARD OF REVIEW

Summary judgment is appropriate when the movant demonstrates that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden, and the court will draw "all justifiable inferences" in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). Nevertheless, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks and citation omitted). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits its own affidavits,

declarations, or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

## ANALYSIS

I.     **The Beresford Defendants Are Entitled to Summary Judgment on Plaintiffs' Breach of Contract Claims.**

Because plaintiffs have failed to provide sufficient evidence for a reasonable jury to find that the Beresford defendants breached the Covenants, defendants are entitled to judgment on those claims. *See* Am. Compl. ¶¶ 53-88 (Counts I-IV). Plaintiffs' breach of contract claims turn on the answers to two questions: (1) whether 1400 Eye Street is located within four blocks of plaintiffs' restaurants; and (2) whether defendants have solicited trade within four blocks of plaintiffs' restaurants. *See id.* ¶¶ 57, 68, 75, 86. The defendants contend both that 1400 Eye Street is more than four blocks from plaintiffs' restaurants and that they have not—and plaintiffs have not provided any evidence thereof—solicited trade within four blocks of plaintiffs' restaurants. Beresford Defs.' Mot. 14-21; Def. FGE's Mot. 15-18. I agree, and, therefore, the Beresford defendants' motion must be granted and the plaintiffs' motion must be denied as to these claims.

A. **Location of 1400 Eye Street**

According to the maps submitted by the parties, more than four blocks separate 1400 Eye Street on a direct line from each National Place and International Square. *See* Ex. B to Beresford Defs.' Mot.; Exs. LLL, MMM, NNN to Pls.' Opp'n Beresford. Nevertheless, plaintiffs argue that 1400 Eye Street's physical location still violates the Covenants, based upon their contentions that "a distance of four (4) blocks" actually

refers to a four-block *radius* and that certain "blocks" between the restaurants are not actually blocks under the Covenants. Pls.' Opp'n Beresford 4-9.   For the following reasons, plaintiffs' arguments are flawed.

"Where the language in [a contract] is unambiguous, its interpretation is a question of law for the court." *Independence Mgmt. Co., Inc. v. Anderson & Summers, LLC*, 874 A.2d 862, 867 (D.C. 2005).   Whether a contract's language is ambiguous is also a question of law for the court. *Akassy v. William Penn Apartments Ltd. P'ship*, 891 A.2d 291, 299 (D.C. 2006).   To determine whether language is ambiguous, courts "examine the document on its face, giving the language used therein its plain meaning." *Id.* at 299 (citation omitted).   Here, the Covenants are unambiguous; the relevant language refers simply to a "distance of four (4) blocks."[7]   Plaintiffs' interpretations are discounted by this plain language—the Covenants neither reference radii nor exclude certain areas from the definition of blocks.

Plaintiffs contend, however, that referencing other evidence is necessary to determine how a reasonable person would interpret this language. *See* Pls.' Opp'n Beresford 4-7 (citing *St. James Mut. Homes v. Andrade*, 951 A.2d 766, 771 (D.C. 2008)); Pls.' Mot. 10-12.   Even considering additional evidence, a reasonable person would still reject plaintiffs' interpretations.   First, plaintiffs claim that a protected territory in a business sale is "customarily defined as a circular area determined by a particular radius"

---

[7]      In pertinent part, the Covenants prohibit the "sellers" from "engag[ing] in the business similar to said Business [or] solicit[ing] trade from said Business for a distance of four (4) blocks from the Business . . . ." Am. Compl. Exs. D ¶1, E ¶ 1.

and cite two cases for support: *Allison v. Seigle*, 79 F.2d 170 (D.C. Cir. 1935) and

*Deutsch v. Barsky*, 795 A.2d 669 (D.C. 2002). Pls.' Opp'n Beresford 5-6. [8] But, far from

representing any customary practice, the non-compete clauses in both of those cases

specifically included the term radius, unlike those here. *See* 79 F.2d at 171; 795 A.2d at

671. Plaintiffs also argue a course-of-dealing supports their interpretation because these

parties were aware of non-compete language in other documents that defined a prohibited

area with a radial distance. *See* Pls.' Opp'n Beresford 5-7. At best however, plaintiffs'

examples only show that the parties may have been aware of such radius language and

chose not to use it.[9]  Finally, plaintiffs contend, without offering *any* support, that

counting a certain block between 1400 Eye Street and National Place, "the triangular area

bounded by 14th and H Streets, and New York Avenue," would be "unreasonable." *See*

*id.* at 9.[10]  In sum, plaintiffs have failed to offer any support for their interpretations.

---

[8]     Plaintiffs also argue that the correct location for mapping National Place is the
intersection of 13th and F Streets, N.W. and not its "official location" at 1331
Pennsylvania Avenue, which is the address of the commercial property within which
National Place is located. Pls.' Opp'n 4-5. Although defendants do not appear to
disagree, 1400 Eye Street is still more than four blocks from either location.

[9]     Although the Covenants' language does not support plaintiffs' radius theory,
plaintiffs' suggested calculation of the radius is still unreasonable. In particular, plaintiffs
simply assert that the radius for National Place extends four blocks *north* while the radius
for International Square extends four blocks *east*. Pls.' Opp'n Beresford 7-8.

[10]    Plaintiffs argue that the International Place restaurant is within four blocks of 1400
Eye Street only under their radius theory. *See* Pls.' Opp'n Beresford 8-9. Even assuming
the parties intended to use this approach, plaintiffs, however, again advance an
unreasonable interpretation, refusing to acknowledge certain blocks without any valid
justification besides their assertion that these blocks contain parks "on which no buildings
exist, and therefore offer no meaningful territory." *Id.* at 8.

9

Moreover, plaintiffs even admit that they "did not discuss their subjective interpretation of the language prior to executing the [Covenants]." *Id.* at 5.[11] And, to the extent any lack of clarity persists after reviewing this other evidence, any remaining conflicts would be resolved against plaintiffs as their *own* attorney drafted the Covenants. Decl. of Forehand, Ex. A to Beresford Defs.' Mot. ¶¶ 33-34 [Dkt. #51-2]; *see 1901 Wyoming Ave. Coop. Ass'n v. Lee,* 345 A.2d 456, 462 (D.C. 1975). Accordingly, 1400 Eye Street's physical location does not violate the Covenants.

### B. Soliciting Trade

Second, plaintiffs have failed to provide any evidence that the defendants solicited trade within the four-block restricted areas. Apparently recognizing this deficiency, plaintiffs resort to an effort to redefine the phrase "solicit trade" such as to expand the restricted areas beyond four blocks. *See* Pls.' Opp'n Beresford 9-11; Pls.' Mot. 12-14; *see also* Dep. of Byung Cho, Ex. I to Beresford Defs.' Mot. 80:3-81:16 [Dkt. #51-10]. Specifically, plaintiffs claim that "solicit trade" must be interpreted broadly to give the clause some effect as FGE already prohibits its franchisees from independently advertising. *See* Pls.' Opp'n 9-10; *see also* Pls.' Mot. 13 (claiming that "prohibiting only the active soliciting of customers would deprive [this clause] of all meaning"). Plaintiffs argue therefore that the Covenants prohibit defendants from opening a restaurant with a

---

[11]     Plaintiffs' deposition testimony reveals that plaintiffs consider the definition of blocks to be limited to those areas both with buildings, *see* Dep. of Byung Cho 88:10-89:12, FGE Summ. J. App. 81-82 [Dkt. # 52-3], Dep. of Hana Cho 31:10-32:7, FGE Summ. J. App. 126-27, and between separate, numbered north-south streets, *see* Dep. of Hana Cho 38:12-40:10, FGE Summ. J. App. 129-131. It would be unfair, to say the least, to adopt and sanction an undisclosed, subjective interpretation of such a basic term.

"passive draw" or "Trade Area" [12] that intrudes within four blocks of plaintiffs' restaurants. *See* Pls.' Opp'n Beresford 10; Pls.' Mot. 12-14. But, plaintiffs present a false choice because their interpretation is plainly unreasonable.

The fact that defendants might otherwise be prohibited from advertising Five Guys does not justify an unreasonable interpretation contrary to the Covenants' plain language, which does not mention a "trade area." *See District of Columbia v. D.C. Pub. Serv. Comm'n*, 963 A.2d 1144, 1155 (D.C. 2009) (noting that courts must give a "reasonable, lawful, and effective meaning to all [a contract's] terms").[13] To have any discernible standard, the Covenants cannot possibly prevent defendants from performing actions, which may have a passive effect, *outside* of four blocks. Moreover, non-compete agreements should be construed narrowly so as to be reasonable. *See Deutsch v. Barsky*, 795 A.2d 669, 674-78 (D.C. 2002). Therefore, plaintiffs have failed to show that defendants solicited trade in violation of the Covenants, and defendants are entitled to judgment on the breach of contract claims.

---

[12]    FGE uses the term "Trade Area" to refer to the distance that a customer will travel to a Five Guys. Def. FGE's Opp'n Pls.' Mot. 12 [Dkt. # 63]. Defendant Forehand identified National Place and International Square as within 1400 Eye Street's Trade Area on a site evaluation form sent to FGE. Pls.' Opp'n Beresford 9, ¶ 60.

[13]    Further, a plain reading of this clause would not "deprive it of all meaning." *See* Pls.' Mot. 13. The Covenants prohibit sellers from "engag[ing] in the business similar to said Business [or] solicit[ing] trade from said Business for a distance of four (4) blocks from the Business . . . ." Am. Compl., Exs. D ¶ 1, E ¶ 1. Under a reasonable interpretation, sellers would still be prohibited from opening a different but *similar* burger restaurant, such as a BGR The Burger Joint or an In-N-Out Burger, and advertising that restaurant within four blocks of plaintiffs' restaurants.

11

## C. The Individual Defendants

Even if plaintiffs could prove defendants breached the Covenants, Charles and Dolores Beresford and Stephen Forehand (the "individual defendants") would still be entitled to summary judgment because they are not parties to the Covenants.   Neither Beresford was personally a party to the Purchase Agreement or the Covenants, and Stephen Forehand was a party only to the Purchase Agreement. *See generally* Am. Compl. Exs. B, D, E.  Additionally, through the Covenants' integration clauses, the Covenants superseded the Purchase Agreement's non-compete clause. *See* Am. Compl. Exs. D ¶ 5, E ¶ 5; *see also Ozerol v. Howard Univ.*, 545 A.2d 638, 642 (D.C. 1988) (noting that an integrated contract precludes introduction of prior agreements). Therefore, only the Froda entities, the actual signatories, may be bound by the Covenants.

Plaintiffs contend, however, that the Purchase Agreement remains enforceable against Forehand or, alternatively, that the individual defendants are liable under the Covenants under an alter-ego theory. Pls.' Opp'n Beresford 11-18.  These arguments are without merit.  First, plaintiffs claim that the Purchase Agreement cannot have merged because the parties to that agreement and the Covenants were not identical. *See id.* at 12. But, plaintiffs cite no binding authority for this proposition. *Cf. Wash. Inv. Partners of Del., LLC v. Sec. House, K.S.C.C.*, 28 A.3d 566, 574 (D.C. 2011) (enforcing integration clause against party that signed that agreement where different companies had signed the two agreements).  Further, because the non-compete agreements merged, plaintiffs cannot rely on Purchase Agreement language, including that document's non-merger clause, to argue that the parties did not want the agreements to merge. *See* Pls.' Opp'n

12

Beresford 12.; Am. Compl. Ex. B ¶ 19. And, even though the Covenants refer to the sellers' potentially acting as an "officer, director, or employee of a corporation, or as sole proprietors," Pls.' Opp'n Beresford 12-13, there is no question that the Covenants define "Seller" *only* as Froda and Froda Intl., respectively, Am. Compl. Exs. D, E. Finally, plaintiffs contend that the Covenants would be "illusory" if at least one of the individual defendants was not bound. Pls.' Opp'n Beresford 13. Yet, this argument warrants little weight given that the Covenants were drafted by the *plaintiffs'* own attorney, *see* Forehand Decl. ¶¶ 33-34, and that it is contradicted by the Covenants' express terms. Therefore, the Covenants, and not the Purchase Agreement, are the operative non-compete agreements.

Similarly, plaintiffs' claims under the "alter-ego" theory of liability fail. *See* Am. Compl. ¶¶ 60-70 (Count II), 78-88 (Count IV).[14] Under, the "alter-ego" theory, a party may "fasten liability on the individual shareholder" when certain circumstances are present: "(1) unity of ownership and interest, and (2) use of the corporate form to

---

[14]    Plaintiffs contend that Virginia law governs this veil-piercing analysis. *See* Pls.' Opp'n Beresford 13. But, in diversity cases, a federal court "applies the choice of law rules of the forum state (or district or territory)." *Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 953 (D.C. Cir. 2001) (citation omitted); *see also TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc.*, 808 F. Supp. 2d 60, 64-65 (D.D.C. 2011) (after well-reasoned analysis, following majority approach of applying District of Columbia's choice-of-law rules in veil-piercing cases). Under District of Columbia law, courts evaluate the conflicting jurisdictions' "governmental policies" to "determine which jurisdiction's policies would be most advanced by having its law applied." *Id.* at 65. Courts consider facts such as the locations of the contracting, contract negotiation, contract performance, the parties' incorporation, and the parties' principal place of business. *Id.* Considering those facts, District of Columbia law controls here, predominantly because the defendants' alleged conduct occurred in D.C., where the Covenants are focused.

perpetrate fraud or wrong or other considerations of justice and equity justify it." *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470-71 (D.C. 2008) (internal quotation marks and citations omitted).   Although an in-depth analysis is unnecessary, at a minimum, plaintiffs have failed to provide sufficient evidence that the entities were used to perpetuate fraud or other wrongs.   First, plaintiffs claim that Forehand used the entities improperly to provide money to family members, but Forehand's testimony shows that those individuals provided the entities with labor or services.   *See* Pls.' Opp'n Beresford 15-16.   Further, plaintiffs contend that Forehand was actually "the principal developer and franchisee" and was somehow shielding himself from accountability.   *Id.* at 16-18. Yet, plaintiffs fail to show any injustice that would necessitate piercing the corporate veil, *e.g.*, the individual defendants' skirting the Covenants' obligations by opening a new restaurant without using the Froda entities.   Therefore, even if the Covenants were breached, the individual defendants would still be entitled to judgment.

## II.     The Beresford Defendants Are Entitled to Summary Judgment on Plaintiffs' Claim of Breach of the Implied Duty of Good Faith and Fair Dealing.

Plaintiffs have also failed to provide sufficient evidence that the Beresford defendants breached an implied duty of good faith and fair dealing.   Am. Compl. ¶¶ 89-93 (Count V).[15]   Plaintiffs allege that defendants breached this duty "by withholding from Plaintiffs their intention to open a new franchise within the Restricted Territory and thereafter establishing and operating a competing franchise within the Restricted

---

[15]     The individual defendants are also entitled to summary judgment on this claim because they were not parties to the Covenants.   *See supra* section I.C.

14

Territories." *Id.* ¶ 92.  As previously discussed, plaintiffs cannot show that 1400 Eye Street is within the protected area.  And as for the claim that defendants withheld their intention to build a new franchise, Plaintiffs have not provided any actual evidence that defendants believed the new restaurant would breach the Covenants.  *See* Pls.' Opp'n Beresford 18-19.[16]  Regardless, this claim is flawed because defendants simply had no duty under the Covenants to disclose their business plans.  *C&E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 275 (D.D.C. 2009) ("The breach of the duty of good faith and fair dealing must necessarily arise out of the performance or enforcement of the contract, not out of the contract negotiations.") (citing *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 373-74 (D.D.C. 2008)).  Therefore, the Beresford defendants' motion must be granted and the plaintiffs' motion must be denied as to this claim.

### III.   The Beresford Defendants Are Entitled to Summary Judgment on Plaintiffs' Claim of Fraud.

Plaintiffs' fraud claim against the Beresford defendants must also fail.  Am. Compl. ¶¶ 98-106 (Count VII). "The essential elements of common law fraud are: (1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977) (citations omitted).

---

[16]   Plaintiffs again attempt to conflate the Five Guys' Trade Area concept with the Covenants' specific terms by arguing that sellers knew that 1400 Eye Street's Trade Area would encompass National Place and International Square. *See* Pls.' Opp'n Beresford 19. But, again, 1400 Eye Street's Trade Area is irrelevant in analyzing the Covenants. Moreover, plaintiffs tried to negotiate a five-block protected area with Forehand, but he specifically rejected that proposal. Beresford Defs.' Mot. 5, ¶ 26; Dep. of B. Cho, Ex. I to Beresford Defs.' Mot 44:22-46:22 [Dkt. # 51-10]. This indicates that Forehand believed that 1400 Eye Street was *more* than four blocks from plaintiffs' restaurants.

First, plaintiffs argue that the defendants, primarily Forehand, committed fraud solely by entering into the non-compete agreements without the intention to abide by these agreements. *See* Pls.' Opp'n Beresford 20. Such a claim would require, however, that defendants actually breached the Covenants: a "contractual commitment may be actionable as fraud," but "the first step to this inquiry is whether the contract was in fact breached at all." *Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1234-35 (D.C. 2005). Even if plaintiffs were able to show the defendants breached the Covenants, plaintiffs have not provided the requisite clear and convincing evidence that the defendants, when entering the Covenants, intended to breach them. *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002) (holding that plaintiffs must prove common law fraud by clear and convincing evidence); *see also supra* note 16 (discussing evidence indicating that Forehand believed 1400 Eye Street would not violate the Covenants).

Plaintiffs also contend that defendants committed fraud by concealing the fact that they planned to open 1400 Eye Street. *See* Pls.' Opp'n Beresford 20. But, as previously discussed, the defendants were not under any duty to disclose their plans. *See also Kapiloff v. Abington Plaza Corp.*, 59 A.2d 516, 517 (D.C. 1948) ("[M]ere silence does not constitute fraud unless there is a duty to speak."). Nor have plaintiffs provided any evidence that defendants misrepresented to plaintiffs the locations of their planned restaurant.[17] At bottom, plaintiffs' fraud claim is inextricably bound to plaintiffs'

---

[17]     Moreover, it seems obvious that the defendants would attempt to open a new Five Guys outside of the restricted area. Furthermore, Forehand specifically disclosed the

deficient breach of contract claims, and, therefore, defendants are also entitled to judgment on this claim. *See* Pls.' Opp'n Beresford 20 ("The allegations of fraud in this case closely parallel Plaintiffs' claims for breach of contract."); *see also* Am. Compl. ¶¶ 99-103 (alleging fraud based on defendants' representations that they "would not compete with Plaintiffs within 4 blocks of each restaurant").

### IV. FGE Is Entitled to Summary Judgment on Plaintiffs' Tortious Interference with a Contract Claim.

Because plaintiffs have failed to provide evidence that FGE intentionally procured a breach of contract, FGE is entitled to summary judgment on plaintiffs' tortious interference claim. *See* Am. Compl. ¶¶ 107-114 (Count VIII). A breach of contract or failure of performance is a prerequisite for tortious interference claims. *Casco Marina Dev., L.L.C. v. D.C. Redevelopment Land Agency*, 834 A.2d 77, 83 (D.C. 2003); *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 290 (D.C. 1989) ("One who intentionally and *improperly* interferes with the performance of a contract . . . by inducing or otherwise causing the third person not to perform the contract, is subject to liability. . . .") (quoting Rest. 2d Torts § 766 (1979)).[18] As previously stated, plaintiffs

---

defendants' intention to open two additional stores to the plaintiffs' broker. *See* Noh Decl. ¶ 9; Ex. JJ to Pls.' Opp'n Beresford [Dkt. #56-4].

[18]     Even if the plaintiffs were able to prove a breach, FGE would still be entitled to judgment on this claim because FGE's actions were not the proximate cause of the alleged breach and resulting damages. *See generally Connors, Fiscina, Swartz & Zimmerly v. Rees*, 599 A.2d 47 (D.C. 1991) (analyzing proximate cause in tortious interference claim). Plaintiffs allege that FGE's franchise approval and execution of the new franchise agreement caused a breach. Am. Compl. ¶ 112. But, even if FGE acted with knowledge of the non-compete agreements, FGE's actions were only *necessary* conditions for defendants to open a new restaurant—not direct causes of this event. *See*

have not provided any evidence that defendants, through opening 1400 Eye Street or

other actions, breached the Covenants or otherwise failed to perform.   Therefore, FGE's

motion must be granted and the plaintiffs' motion must be denied as to this claim.

## V.   Defendants Are Entitled to Summary Judgment on Plaintiffs' Common Law and Statutory Business Conspiracy Claims.

Plaintiffs have also failed to provide sufficient evidence to support their

conspiracy claims.   Am. Compl. ¶¶ 115-19 (Count IX, Common Law Conspiracy), ¶¶

120-24 (Count X, Statutory Business Conspiracy).[19]   Under District of Columbia law, the

---

*also* Rest. 2d Torts § 766 cmt. n (1979) ("One does not induce another to commit a breach of contract with a third person . . . when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person.").

Moreover, plaintiffs have not provided any evidence that FGE had the requisite knowledge of the Covenants, which were the operative non-compete agreements.   *See Casco Marina Dev., L.L.C.,* 834 A.2d at 83 (recognizing defendant's "knowledge of the contract" as a tortious interference element); *see also* Dep. of Adam Aberra, Ex. J to Pls.' Opp'n FGE 39:9-45:11 [Dkt.  57-2]; *see also* Pls.' Opp'n FGE 4-6.

[19]   Defendants are also entitled to judgment on Count X because the Virginia Conspiracy Statute, Va. Code Ann. § 18.2 – 499, 500, is inapplicable to this case. Although plaintiffs contend that this issue "has already been resolved" by this Court's denial, by minute order, of FGE's motion to dismiss and is thus subject to the law-of-the-case doctrine, *see* Pls.' Opp'n Beresford 22, plaintiffs overlook the fact that that ruling was an interlocutory order.  *See Office of Senator Mark Dayton v. Hanson,* 550 U.S. 511, 515 (2007) (holding the denial of a motion to dismiss is an interlocutory order). Therefore, that denial is not the law of the case and may be reconsidered.  *Langevine v. District of Columbia,* 106 F.3d 1018, 1023 (D.C. Cir. 1997) ("Interlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment.").

Here, again, the District of Columbia's choice-of-law rules mandate applying D.C. law to this case's facts because the alleged injuries and harm occurred in D.C. *See Drs. Groover, Christie & Merritt, P.C. v. Burke,* 917 A.2d 1110, 1117 (D.C. 2007).  Even though the defendants include Virginia entities and residents, and some actions, including FGE's approval of 1400 Eye Street, may have occurred in Virginia, *see* Pls.' Opp'n Beresford 22, the essence of the alleged harm—the opening of 1400 Eye Street—

elements of civil conspiracy are: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001) (internal citations and quotation marks omitted). First, plaintiffs' civil conspiracy claim fails because it is entirely dependent on their deficient tortious interference and fraud claims. The civil-conspiracy theory is only a "means for establishing vicarious liability for the underlying tort," *id.* at 1023-24 (internal citations and quotation marks omitted), and is not itself an "independent tort action," *Waldon v. Covington*, 415 A.2d 1070, 1074 n. 14 (D.C. 1980) (citation omitted). Therefore, without an underlying tort, this civil conspiracy claim also fails. *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 73 (D.D.C. 2005).

Even if plaintiffs' tortious interference or fraud claims were viable, plaintiffs have failed to provide *any* evidence of an agreement to participate in an unlawful act. Instead, plaintiffs' cited evidence relates only to lawful actions conducted in a lawful manner. *See Weishapl*, 771 A.2d at 1023. First, plaintiffs claim that at all relevant times, the defendants knew about the planned 1400 Eye Street restaurant and that its Trade Area would encompass plaintiffs' restaurants. *See* Pls.' Opp'n Beresford 22. But, defendants had no duty to disclose that information, and the restaurant's Trade Area is irrelevant

---

occurred in the District. Indeed, even Virginia choice-of-law rules would favor this approach. *See also Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993) (applying lex loci delicti, or the "place of the wrong," to resolve conflicts of law). Thus, the Virginia Conspiracy Statute is inapplicable here.

under the Covenants.[20]  Plaintiffs also contend that FGE's act of granting Froda a right-of-first-refusal if B&H National defaulted on its lease permits an "inference that Sellers and FGE expected Plaintiffs to fail." Pls.' Opp'n Beresford 23.  But, the fact that the defendants prepared for this contingency does not indicate any unlawful act.   Moreover, it borders on the absurd to claim that FGE would consciously act in such a way to harm one of its own franchisees.   Defendants are therefore entitled to judgment on the conspiracy claims.

### VI.   Plaintiffs and Third-Party Defendants Are Entitled to Summary Judgment on FGE's Counterclaims and Third Party Claims.

Finally, Plaintiffs and the Chos are entitled to summary judgment on FGE's counterclaims and third-party complaint.  These claims hinge entirely on plaintiffs' allegedly breaching the Transfer and Release Agreement by filing this suit.  Def. FGE Answer & Countercl. 13-15; Def. FGE Third Party Compl. ¶¶ 1, 10-20.  But, because plaintiffs' claims are based in part on events that occurred *after* the Transfer and Release Agreement's effective date of October 14, 2008, that agreement does *not* bar plaintiffs'

---

[20]      Apparently, plaintiffs did not actually inquire where defendants planned to open new Five Guys franchises *before* they offered to buy the two restaurants on June 2, 2008. *See* Pls.' Opp'n Beresford 20-23; Pls.' SOF ¶¶ 51-55.  Instead, plaintiffs claim only that defendants were obligated to disclose this information.  Although slightly unclear, Byung Cho apparently asked Forehand about his development plans at a July 15, 2008 meeting after the Chos had signed the Purchase Agreement, but Forehand did not disclose any plans about 1400 Eye Street.  *Compare* Ex. III to Pls.' Opp'n Beresford ¶ 9 [Dkt. #56-7] (stating that Cho asked Forehand about new stores but Forehand only disclosed plans at other sites) *with* Ex. RRR to Pls.' Opp'n Beresford  100:18-107:3 [Dkt. #56-8]  (Cho's stating that he may have asked about a development plan).  However, this is simply not evidence that defendants had agreed to participate in any unlawful act.

claims. *See* Am. Compl., Ex. C 1-2.[21] Therefore, plaintiffs and the Chos are entitled to summary judgment on FGE's counterclaims and third-party claims, thereby dismissing these claims in their entirety.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS the defendants' motions for summary judgment [Dkt. ## 51, 52] and DENIES in part and GRANTS in part the plaintiffs and third-party defendants' motion for summary judgment [Dkt. #62]. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[21] In particular, although FGE e-mailed Beresford on June 24, 2008 with a Site Approval Letter (dated June 5, 2008) for 1400 Eye Street, Forehand later sent FGE an e-mail on September 15, 2008 stating that the 1400 Eye Street project was "dead" because of an issue with the property lessor. Ex. I to Pls.' Mot. at FGE000444-45 [Dkt. #62-3]; Ex. J to Pls.' Mot. at FGE000414. FGE confirmed the project's cancellation on October 6, 2008 and, after subsequent developments, only later finally approved the 1400 Eye Street lease around September 2009. Pls.' Mot. 4, ¶ 14; Ex. T to Pls.' Mot. at FGE001233-34; Dep. of Adam Aberra, Ex. U to Pls.' Mot. 82:21-84:8. FGE has not provided any evidence to contradict these claims aside from asserting that it is "undisputed that FGE's site approval took place in June of 2008" and claiming that plaintiffs' tortious interference claim was a "contingent claim" barred by the release. *See* Def. FGE's Opp'n Pls.' Mot. 13-15. But, the plaintiffs' claims against FGE also relate to the new franchise agreement's final execution. *See* Am. Compl. ¶¶ 107-24.